OCTOBER AND NOVEMBER TERM, 1881, No. 5.

## Appeal of Samuel Plumer *et al.*

1. In proceedings upon a petition for the payment of arrears of dower, it appeared that subsequent to these arrears becoming due, a mortgagee of the land had caused it to be sold by the sheriff, and had become the purchaser; and the petitioner had excepted to the acknowledgment of the sheriff's deed, whereupon the Court decided as follows : The Court being of opinion as claimed by attorney for plaintiff that the widow's dower is not discharged by sheriff's sale, it being an interest in land not affected by sale, exceptions dismissed. *Held*, that these facts alone did not estop the purchaser who was the respondent from claiming exemption of the land from arrearages.

2. If it were true that the counsel for the respondent and the Court below in the proceedings upon the mortgage entertained an erroneous opinion as to the discharge of the arrears, an element of estoppel would not necessarily arise.

APPEAL of Samuel Plumer and T. M. Jones from the decree of the Orphans' Court of *Allegheny County*, sustaining exceptions to the report of an auditor, appointed to ascertain the facts and report the same, and his opinion, in the matter of the petition of Maria McFarland for the payment of arrears of dower.

The material facts appearing before the auditor were as follows :

John McFarland died intestate, December 10th, 1861, seized in fee of a tract of land now the Twentieth and

[Appeal of Samuel Plumer *et al.*]

Twenty-second wards of the city of Pittsburgh, leaving surviving him a widow, the petitioner, and three daughters. Under partition proceedings in the Orphans' Court, in 1867, Sarah D., one of his daughters, was allotted a certain purpart of the estate, containing 14 acres and 49 perches, subject to the annual payment of the sum of $500.71 to the petitioner as her dower interest. Sarah D. McFarland married Dr. A. M. Barr, and she and her husband divided her purpart into lots. Subsequently they executed a mortgage upon lots Nos. 1 and 15, and on parts of lots Nos. 2, 3, 6, 16, and 17, to Samuel Plumer. Under proceedings upon this mortgage the lots embraced in it were sold by the sheriff, December 7th, 1877, to Plumer, the mortgagee, for $450.

The petitioner claimed upon these lots, as well as others, six instalments of dower, falling due November 30th, 1872, 1873, 1874, 1875, 1876, and 1877.

· It was contended on behalf of Plumer and his vendee, T. M. Jones, who had purchased lot No. 1, and parts of lots No. 2 and 3, June 18th, 1880, that these arrears of dower had been discharged by the sheriff's sale.

Counsel for petitioner offered in evidence the judgment of Samuel Plumer against A. M. Barr and wife, at No. 521, September Term, 1877, Lev. Fa. No. 416, September Term, 1877, Al. Lev. Fa. No. 296, December Term, 1877, showing sale of the property thereon December 7th, 1877, to plaintiff for $450.04, which was applied to costs and taxes; that December 17th, 1877, Maria McFarland excepted to the acknowledgment of the sheriff's deed, and on January 12th, 1878, on Argument List No. 6, page 205, the Court decided, *the Court being of opinion, as claimed by attorney for plaintiff, that the widow's dower is not discharged by sheriff' s sale, it being an interest in the land not affected by sale, exceptions dismissed.* He also offered the entire record and proceedings in that case in evidence, and claimed that Plumer was estopped from denying the petitioner's right to recover against the property purchased by him at the sheriff's sale.

The auditor found, *inter alia*, that these facts did not constitute an estoppel, and awarded accordingly.

The petitioner excepted, *inter alia*, to this finding.

The Court below sustained the exception, saying, *inter alia:*

"There are special circumstances in the sale to Plumer which give rise to an intervening equity in favor of the widow, and prevent the divestiture of the arrearages of dower as respects the lot purchased by him. The effect of the proceeding on the application of the widow was to leave the arrearages undisturbed by the sale. That ' application having been dismissed upon the express ground that they

were not divested, it must be conclusively presumed that the sale would have been set aside had the Court been of opinion that the arrearages were divested by operation of law. The equities were all in favor of the widow and would no doubt have prevailed. There can be no doubt that a sheriff's sale may be made expressly subject to a lien which would otherwise be divested. Tower's Appropriation, 9 W. & S., 103; Zeigler's Appeal, 35 Pa. St., 173. Whether the condition be imposed when the bid is made, or before the delivery of the deed, by the proper authority, can obviously make no difference. The purchaser is not prejudiced. He is in no worse position after than before the sale is consummated. Mr. Plumer had held his mortgage subject to the payment of the arrearages of dower, and he knew when he accepted the deed that they were still unpaid. ' It is contrary to morality as well as sound policy to permit a party to avail himself of a particular point in a case, and afterward take a position diametrically opposite in another, merely because it may be in his interest to deny what he has most solemnly asserted at another time and for another purpose.' Goodman *v*. Losey, 3 W. & S., 529. ' Are we to allow the solemn assertion of a party made in a judicial proceeding when the matter asserted is for the interest of that party, and when the object in making it has been accomplished, turn around and assert its non-existence in another case with the same party, and by that means bind him to a position which he otherwise could have got rid of by pursuing his legal remedies? This would be manifest injustice, and contrary to every principle of law.' Baily *v*. Baily, 44 Pa. St., 274. ' Estoppels are sometimes said to be odious, and it has been affirmed that there is no such thing as an equitable estoppel. But the doctrine of election, which prevents a party from claiming in repugnant rights, and which has been advantageously introduced into courts of equity, is manifestly an extension of the principle. In courts of law they are, for the most part, reconcilable to the purest morality, and when they produce neither hardship nor injustice, they merit indulgence, if not favor. The conclusiveness of judgments which conduces so essentially to peace and repose has no other foundation. The plaintiff in error had the benefit of the award as far as it would serve him, and shall not now disaffirm his solemn act in a court of record.' Martin *v*. Ives, 17 S. & R., 364, per GIBSON, C. J."

Plumer and Jones then appealed, assigning as error that the Court erred in ruling as matter of law as above set forth.

*Sutton* and *Plumer* for appellants.

[Appeal of Samuel Plumer *et al.*]

The Court assumed that the attorney for Plumer claimed at the time the exceptions were argued that the arrearages of dower were not divested by the sale.

A party is not to be estopped by questions of law propounded and argued by counsel: Dungan *v.* American Life Insurance Co., 52 Pa. State Reports, 253.

As to estoppel counsel cited: Commonwealth *v.* Moltz, 10 Barr, 527; Eldred *v.* Hazlett's Adm'rs, 9 Casey, 307; Helser *v.* McGrath, 2 P. F. Smith, 534; Miranville *v.* Silverthorn, 12 Wright, 149; Dezell *v.* Odell, 3 Hill (N. Y.), 215; Bispham's Eq., Sec. 288.

*Bruce* and *Negley* for appellees: Tower's Appropriation, 9 W. & S., 103; Zeigler's Appeal, 35 Penna. St., 173; Goodman *v.* Losey, 3 W. & S., 529; Baily *v.* Baily, 44 Penna. St., 274; Taylor *v.* Parkhurst, 1 Barr, 197; Spaulding *v.* Eimers, 3 Pittsburgh Rep., 306; Martin *v.* Ives, 17 S. & R., 364.

The opinion of the Court was delivered November 7th, 1881, by GREEN, J.

We find ourselves unable to sustain the judgment of the learned Court below in this case, on account of the absence of testimony necessary to make out an estoppel. It is the only question in the case, and the conclusion of the Orphans' Court was founded upon a single piece of testimony. There is no doubt whatever that the arrearages of dower due to Mrs. McFarland were discharged by the sheriff's sale under the Plumer mortgage. This sale being for a small sum, an application was made on behalf of the widow to the Court of Common Pleas to set it aside, and a bid of four thousand dollars was made if the property should be resold.

The Court, however, refused the application, and dismissed the exceptions to the sale. The only evidence of the action of the Court and the reason for it, to be found in this record, is an entry on the argument list in the following words: "The Court being of opinion, as claimed by attorney for plaintiff, that the widow's dower is not discharged by sheriff's sale, it being an interest in the land not affected by sale, exceptions dismissed." If by this was meant that the principal sum of the dower was not discharged, it was correct. The dower itself and all future accretions of interest remained, and were unaffected by the sale. If, however, it was intended as an expression, to the effect that the arrearages of annual payment past due were discharged, it was a mistake. Dickinson *v.* Beyer, 6 Norris, 274, is an emphatic determination that arrearages of interest due upon the principal sum of a widow's dower at the time of a sheriff's sale of

[Leonard *v.* Fuller.]

the land subject to the dower are discharged by the sale. But even if it were true that both the counsel for Plumer in the proceeding on the mortgage, and the judge of the Common Pleas, entertained an erroneous opinion on this subject, it by no means follows that any element of estoppel would necessarily arise from that circumstance against Plumer, to prevent him from subsequently asserting the exemption of the land from the arrearages. It does not appear that either he or his attorney agreed that if the sale was not set aside Plumer would pay the arrearages, or would take title subject to their payment. Yet something of that kind, or at least an assertion to that effect to the Court, and the refusal of the Court to set aside the sale in consequence of such assertion, would be requisite to estop Plumer from now asserting the discharge. The subject is one entirely susceptible of proof by witnesses who are now living and competent to testify, but no such persons have been examined or offered for examination, and of anything like these facts there is absolutely no proof whatever on this record, and of course we cannot infer it. A mutual mistake as to the law, which is equally open to both parties, cannot raise an estoppel: Dungan *v.* American Life Ins. Co., 2 P. F. S., 253. In the present case it is not at all clear, from the entry given in evidence, that the judge of the Common Pleas meant to say anything more than that the principal fund of the dower was not discharged. That is the plain meaning of the words of the entry, and we cannot give them any larger meaning without supposing him to have made a mistake as to the law, and that we have no right to do. In either aspect of the case, therefore, it is impossible to raise an estoppel.

Decree reversed, at the cost of the appellee, and record remitted for further proceedings.

GORDON, J., and STERRETT, J., dissent.